## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

PHILLIP OCAMPO,                          :

       Plaintiffs              :        CIVIL ACTION NO. 3:19-0091

       v.                          :               (JUDGE MANNION)

PAUL NOEL, et al.,                       :

       Defendants               :

## MEMORANDUM

### I. Background

On January 15, 2019, Plaintiff, Phillip Ocampo, an inmate confined at the Smithfield Correctional Institution ("SCI-Smithfield"), Huntingdon, Pennsylvania, filed the above captioned *pro se* civil rights action pursuant to 42 U.S.C. §1983. (Doc. 1).

On February 6, 2020, counsel entered an appearance on behalf of Ocampo (Docs. 21, 22) and on March 12, 2020, filed a counseled amended complaint. (Doc. 27). The named Defendants are as follows: Dr. Paul Noel, Department of Corrections ("DOC") Chief of Clinical Services; William H. Dreibelbis, SCI-Smithfield Health Care Administrator; Gerald Hartman, Registered Nurse Supervisor ("RNS"); Correct Care Solutions ("CCS"), LLC; Wellpath, and the following physicians employed by either CCS or

1

Wellpath, Dr. Patel, Dr. Glen Wheeler, Dr. Jennifer Vasinda, and Dr. Andrew Dancha. Id.

Presently before the Court is Defendant, Dr. Glen Wheeler's motion to dismiss Plaintiff's amended complaint, or, in the alternative, motion for summary judgment.[1] (Doc. 40).

Plaintiff's action raises professional negligence, vicarious liability or Eighth Amendment deliberate indifference claims against all Defendants for their treatment of his hernia. (Doc. 27). Plaintiff generally asserts that Defendants failed to properly treat Plaintiff's inguinal hernia and delayed surgical treatment. Id. Plaintiff alleges he suffered persistent pain from the hernia and that it affected his ability to work and play sports. Id. Plaintiff alleges that Defendants continued to delay surgical treatment until the hernia was surgically repaired on February 14, 2020. Id.

Specifically, with respect to Defendant, Dr. Wheeler, Plaintiff alleges that on September 25, 2017, Dr. Wheeler reviewed Plaintiff's ultrasound results. Id. Dr. Wheeler did not take any actions to facilitate the surgical repair of Plaintiff's hernia. Id. He simply noted his intent to schedule Plaintiff

---

[1] Answers to Plaintiff's amended complaint were filed on behalf of the remaining Defendants. (Docs. 29, 39).

2

for a follow-up in four months' time. Id. In the first week of November, 2017, Defendant Dreibelbis spoke with Plaintiff about his medical situation. Id. Defendant Dreibelbis told Plaintiff that his computer records indicated that Defendant Dr. Wheeler had seen Plaintiff and Plaintiff stated that "this was incorrect," in that he had not seen a doctor or medical staff. Id. Defendant Dreibelbis then told Plaintiff that he would be scheduled to see Defendant, Dr. Patel for a consultation about the ultrasound results. Id. Plaintiff was then seen by Dr. Patel on November 14, 2017. Id.

Defendant Wheeler's dispositive motion is ripe for disposition. For the reasons set forth below, this Court will grant Defendant Wheeler's motion for summary judgment in part, and deny his motion, in part.


## II. **Summary Judgment**

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

3

requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Co., 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings

4

with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. White, 826 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. Id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the

5

numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-CV-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief"." Id. at 211 (quoted case omitted).

6

III.   **Statement of Undisputed Facts**

On January 17, 2018, Plaintiff filed Grievance No. 716591, in which

he states the following:

> And Now come, I , Philip Ocampo, who hereby respectfully files
> this inmate complaint pursuant to Pa.Code 93.9(a) against
> Correctional Health Care Administrator Mr. Dreibelbis, Dr.
> Vasinda and Central Officer's Health Care Committee "Correct
> Care Solutions" (who is in contract with the D.O.C. concerning
> medical issues such as approvals and denials for surgery's), for
> Medical Negligence, Deliberate Indifference to my basic
> medical needs, which violates by 8th Amendment to the United
> States Constitution…

(Doc. 45-1 at 35, Official Inmate Grievance). Plaintiff's grievance continues

with a two-page description of his alleged substandard medical treatment

and denial of corrective surgery, rendered by "various PA's, Dr. Patel

(Former Doctor), (CHCA) Dreibelbis and Dr. Vasinda," for Plaintiff's hernia.

Id. For relief, Plaintiff requested to have his "surgery request reinstated"

and if not, then Plaintiff seeks "monetary damages against Pennsylvania

Department of Corrections, D.O.C. Medical Health Care Provider 'Correct

Care Solutions' and the above-named staff members violating my 8th

Amendment to the U.S. Constitution." Id. Plaintiff's grievance does not

identify Defendant, Dr. Wheeler, by name, or contain any reference to any

action or inaction on behalf of Dr. Wheeler. Id.

7

By response dated February 1, 2018, Grievance No. 716591 was

upheld in part and denied in part as follows:

> In your grievance you make claims to deliberate indifference
> and medical negligence against CHCA Dreibelbis, Dr. Vasinda
> and CCS utilization review committee for denying your request
> for a hernia repair. You state that on 12/29/2017 you had a visit
> with Dr. Vasinda in which she informed you that the CCS Health
> Care Committee denied your surgical request and instructed
> you to wear a hernia belt. You also state on 1/4/2018 PAC
> Harris spoke to you about your denial and state she would
> made a second request. You were then informed on 1/6/2018
> by PAC Harris of a second denial. You claim that this denial is
> based on the fact that a hernia is not "life threatening". You
> claim that this denial could place your life and health in danger.
> You claim that the denial is based on cost saving. You are
> seeking to have your surgical request reinstated and
> unspecified monetary damages as corrective actions.
>
> In reviewing your grievance I have spoken to both CHCA
> Dreibelbis and Dr. Vasinda. I have also reviewed your medical
> records since 9/5/2017 when you were first examined by PAC
> Riley concerning your ingroinal (sic) pain. At that visit PAC Riley
> requested an ultrasound to determine the cause of your
> ingroinal(sic) pain. That ultrasound was completed on 9/22/17
> and the report was reviewed by Dr. Wheeler on 9/25/17. The
> ultrasound report "showed a small to moderate hernia that
> increased in size with a Valsalva." This meant at that time that
> you had a hernia and it was reducible. This meant that your
> hernia was not causing loss of function or tissue damage. Dr.
> Wheeler noted in his review of the record to have you followed
> on PA line for four months and an order was written to have this
> scheduled. It is not noted whether this report was reviewed with
> you. On 11/14/17 you were seen through sick call requesting
> information regarding your hernia as you had not been informed
> on anything since your 9/22/17 ultrasound appointment. At that
> appointment PAC Harris reviewed your ultrasound and

8

requested an MD line visit. You were then seen by Dr. Patel on 11/15/17. At that visit he verified your hernia and was going to discuss your hernia at the weekly collegial review. He ordered to have you seen in two weeks on MD line. On 11/29/17 Dr. Vasinda also examined you and was going to check on the status of your surgical request. I cannot find any documentation, for that time, either in your medical record or with CCS if any consult review was requested for a surgical hernia repair.

You were not to medical again until 12/29/17 when you were to see Dr. Vasinda. At that time she informed you that your hernia repair surgery was denied and she ordered you a hernia belt. The hernia belt need to be ordered. You were then seen on PA line on 1/4/18 by PAC Harris. She noted at this visit that you were having increased pain and that she would re-submit your surgical request for collegial review. It is apparent from speaking with Dr. Vasinda and reviewing her progress notes from this visit, that she presented your hernia repair issue at a weekly collegial review, despite the fact that I cannot find any documentation to back this claim.

A consult review was submitted on 1/12/18 for collegial on the same date. At that teleconference review with CCS review committee it was recommended that instead of surgical repair that you have an alternative treatment plan of an MD follow up. I cannot find documentation that you have been scheduled for an MD follow up yet but on 1/12/18 you were to PA line again and saw PAC Harris. She informed you that per Dr. Vasinda, your surgical request was denied at the collegial review. She also noted that you did not have your hernia belt yet.

When I spoke with CHCA Dreibelbis regarding your grievance he was well aware of your hernia issue as he has spoken with you directly several times. He noted that after a conversation with you in November of 2017 he had you seen by Dr. Patel. He also made it quite clear that he cannot deny or approve any surgical requests. Also Dr. Vasinda was aware of your hernia

9

surgery requests. She has made a request through the consult review committee for your hernia and she has examined you herself. She is aware that currently your hernia is still reducible which a clinical indicator for surgery is and that your case has been offered an alternative treatment plan of continued MD line follow up. At this point she is aware that you will need to continue to be followed through PA or MD lines in case your clinical status changes related to your hernia.

I find that your grievance is upheld in part and denied in part. The portion that is denied is your claim to deliberate indifference and medical negligence. I can find no evidence of negligence or deliberate indifference. It is apparent that CHCA Dreibelbis, Dr. Vasinda an the medial staff have provided the community standard of care for your medical needs. You have had your surgical requests reviewed by the CCS review committed as is the standard practice for all requested consults. It is also noted that despite having pain, your hernia has not met the criteria needed for surgical repair per the CCS review committee. I do find merit in the fact that you were ordered a hernia belt and you have not received it as of yet. You also were not notified of your plan of care following your ultrasound in September of 2017. The status of your hernia belt will be verified and provided to you immediately. The medical staff will be trained to notify the patients when any changes to plans of care are occurring.

(Doc. 41-1 at 37, Initial Review Response). Plaintiff filed an appeal to the Facility Manager (Doc. 41-1 at 39, Appeal), which was denied on February 20, 2018, finding that the "grievance officer, RNS Hartman provided [Plaintiff] with a complete and thorough response in regards to [his] issues," and "the documentation and records indicate that proper care has been provided." (Doc. 41-1 at 41, Facility Manager's Appeal Response).

10

On February 25, 2018, Plaintiff filed a final appeal to the Secretary's Office of Inmate Grievance & Appeals (Doc. 41-1 at 42), who, on March 22, 2018, referred the appeal to the Bureau of Health Care Services for further review (Doc. 41-1 at 34) and by decision dated April 26, 2018, upheld Plaintiff's grievance responses as follows:

> Your issue of not being provided proper medial care was reviewed by the staff at the Bureau of Health Care Services. The Bureau of Health Care Services reviewed the medical record and determined that the medical care provided was reasonable and appropriate including the treatment of your right inguinal hernia. The findings of this review concur with the Initial Review Response dated 2/1/18. These clinical decisions are made by your attending practitioner. You are encouraged to participate in your treatment plan and to discuss your concerns or changes of condition with a practitioner. No evidence of wrong doing was identified. Therefore, your requested relief is denied.

(Doc. 41-1 at 31, Final Appeal Decision).

## IV.   Discussion

### A. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

11

exhausted." 42 U.S.C. §1997e(a). This language is mandatory. <u>Ross v. Blake</u>, 136 S. Ct. 1850, 1856 (2016). Moreover, the "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002).

The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. <u>Woodford v. Ngo</u>, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." <u>Id</u>. at 90–91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek[ ] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" <u>Id</u>. at 93 (quoting <u>Porter</u>, 534 U.S. at 525). Courts have concluded that inmates who fail to fully or timely complete the prison grievance process are barred from subsequently litigating claims in federal courts. <u>See</u>, <u>e.g.</u>, <u>Booth v. Churner</u>, 206 F.3d 289 (3d Cir. 2000); <u>Bolla v.</u>

12

Strickland, 304 Fed.Appx. 22 (3d Cir. 2008); Jetter v. Beard, 183 Fed.Appx. 178 (3d Cir. 2006).

Defendant Wheeler argues that Plaintiff failed to exhaust his administrative remedies with respect to his claims against him. Plaintiff does not dispute that Dr. Wheeler was not identified in his grievance; however, he argues, pursuant to Jones v. Bock, 549 U.S. 199 (2007), that "name all defendants" requirement is a prison requirement and not the PLRA's, which defines the boundaries of proper exhaustion.

While the PLRA, itself, does not require a prisoner to have named each individual whom he sues in a prior grievance, Jones, 549 U.S. at 218 (2007), "prisoners are required to complete the administrative review process in accordance with rules that are defined by the prison grievance process"—including the rules relating to whom must be identified in the grievance. Byrd v. Shannon, 715 F.3d 117, 127 (3d Cir. 2013) (citing Jones, 549 U.S. at 218). If a prisoner fails to properly exhaust the available administrative remedies, he cannot bring suit on such claim(s) in federal court. Goins v. Longstreet, 2013 WL 869644, at *5 (W.D. Pa. Feb. 13, 2013) (citing Oliver v. Beard, 2011 WL 4565787, at *7 (M.D. Pa. Sept. 29, 2011); Spruill v. Gillis, 372 F.3d 218, 227–32 (3d Cir. 2004)).

13

The Pennsylvania Department of Corrections ("DOC") has implemented an official Inmate Grievance System, which is governed by Administrative Directive 804 ("DC–ADM 804"). (Doc. 47-2 at 2-36). The relevant provision of the prison grievance process is DC-ADM 804 §1.A.11, which, at the time Plaintiff filed his grievances, stated, in pertinent part, "The inmate shall identify individuals directly involved in the event(s)." The only grievance that relates to Plaintiff's medical treatment is Grievance 716591. This grievance does not mention Dr. Wheeler. By failing to identify Defendant Wheeler either by name or title, Plaintiff procedurally defaulted his claim against him. See Spruill, 372 F.3d at 227-32.

Relying on Spruill, Plaintiff argues that "[t]he Third Circuit has held that the prison can excuse an inmate's failure to specifically name individuals by identifying the unidentified persons and acknowledging that they were fairly within the compass of the prisoner's grievance." (Doc. 47 at 16).

In Spruill, although the Court found that the prisoner had procedurally defaulted his claims, it went on to hold that the prison's grievance process excused the procedural default on the facts before it.

> ... The grievance officer's "Initial Review Response" (the first-level determination under the Grievance System Policy)

14

identified Brown by name. Although the response identified
Brown only as someone who had seen Spruill in the course of
his medical visits, it is not to be expected that a response
rejecting Spruill's grievances on the merits would identify any
malfeasance on Brown's part. The purpose of the regulation
here is to put the prison officials on notice of the persons
claimed to be guilty of wrongdoing. As such, the prison can
excuse an inmate's failure to do so by identifying the
unidentified persons and acknowledging that they were fairly
within the compass of the prisoner's grievance.

The point is close, but we conclude that the prison grievance
officer's recognition that Brown was involved in the events that
Spruill complained of excused any procedural defects in
Spruill's initial grievances. Spruill's grievances and suit are not
about specific instances of insulting treatment by Brown-there
would be no constitutional violation there anyway. Rather, the
grievances and the suit are about a larger-scale denial of
adequate medical care, in which prison officials clearly knew
Brown was alleged to be implicated. Thus we reject the District
Court's dismissal of Spruill's suit against Brown on these
grounds.

Spruill, 372 F.3d at 234–235.

In the instant action, like Spruill, Plaintiff did not identify Defendant

Wheeler in his grievance or appeals therefrom and so he did not "put [him]

on notice of the persons claimed to be guilty of wrongdoing" within the

contemplation of Spruill. However, in Spruill, the prison official charged with

responding to Spruill's initial grievance identified Brown by name in the

response, with the consequence that the Court of Appeals held the prison

had excused the procedural default. Like Spruill, Plaintiff's initial review

15

response specifically identified Dr. Wheeler as having reviewed Plaintiff's ultrasound on September 25, 2017 and noting in his review of the record that Plaintiff is to be followed on PA line for four months. Thus, because Plaintiff's grievance, like Spruill's is "about a larger-scale denial of adequate medical care," the Court finds that the mention of Dr. Wheeler in the Initial Review Response brings Dr. Wheeler within the compass of the Plaintiff's grievance and excuses any procedural default with respect to Plaintiff's claim against him. See Williams v. Beard, 482 F.3d 637, 640 (3d Cir. 2007) (reversing summary judgment on exhaustion grounds, even though the plaintiff procedurally defaulted by failing to name the defendant in his grievance, because "the [initial response] evidences knowledge on the part of prison officials not only that there was a problem, but that [the unnamed Defendant] was involved"). Thus, Plaintiff's procedural default is excused, and Defendant Wheeler is not entitled to summary judgment on Plaintiff's failure to exhaust administrative remedies as to him.

### B. Eighth Amendment Deliberate Indifference

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97

(1976)). In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. See Spruill v. Gillis, 372 F.3d 218, 235-36 (3d Cir. 2004); Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component). Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1979).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347. "[I]f unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." Young v. Kazmerski, 266 Fed. Appx. 191, 193 (3d Cir. 2008)(quoting Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347). Assuming arguendo that the Complaint did satisfy the

17

serious medical need threshold, there are no facts asserted which could establish that could support a claim of deliberate indifference.

With respect to the subjective deliberate indifference component, the Supreme Court has established that the proper analysis for deliberate indifference is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994). A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

When a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). It is true, however, that if inadequate treatment results simply from an error in medical judgment, there is no constitutional violation. See id. However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented. See id.; Ordonez v. Yost, 289 Fed.

18

Appx. 553, 555 (3d Cir. 2008)("deliberate indifference is proven if necessary medical treatment is delayed for non-medical reasons.").The Court of Appeals for the Third Circuit in <u>Durmer</u> added that a non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is already receiving treatment by the prison's medical staff. However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented. <u>See</u> <u>id</u>.

The record reveals that on September 22, 2017, Plaintiff underwent an ultrasound, which Dr. Wheeler reviewed with him on September 25, 2017. The ultrasound report "showed a small to moderate hernia that increased in size with a Valsalva." Dr. Wheeler noted in his review of the record to have Plaintiff followed on PA line for four months and an order was written to have this scheduled.

Plaintiff alleges that Defendant Wheeler was deliberately indifferent to Plaintiff's medical need by not "tak[ing] any actions to facilitate the surgical repair of [Plaintiff's] hernia" and "simply noted his intent to schedule [Plaintiff] for a follow-up in four month's time." (Doc. <u>27</u> at 13).

19

Plaintiff's grievance history regarding Defendant, Dr. Wheeler, clearly demonstrates that Plaintiff received medical attention, and that the attention Plaintiff received lacks the requisite deliberate indifference to support a Section 1983 claim. Upon Plaintiff's first complaint of pain on September 5, 2017, when he was by PAC Riley concerning pain regarding his hernia, he was scheduled for an ultrasound, which he received on September 22, 2017 and results were discussed on September 25, 2017. Thus, Plaintiff's own admission averts any deliberate indifference with respect to treatment for his injury. Plaintiff claims Dr. Wheeler was deliberately indifferent for recommending a recheck[2] in four months and for not ordering surgery. Initially, the Court notes that Plaintiff does not allege, and there is no indication in the record that Dr. Wheeler was actually responsible for any decision to deny Plaintiff surgery.

---

[2] To the extent that Plaintiff claims that Dr. Wheeler did not schedule the follow-up appointment after viewing the ultrasound on September 25, 2017, Plaintiff's own complaint reveals that he was examined, not even two months later, by Dr. Patel on November 14, 2017, who then presented Plaintiff's case to the Review Committee. Thus, Plaintiff was seen and treated shortly after Dr. Wheeler's brief involvement in his care, the alleged failure to schedule an appointment, clearly does not rise to the level of a constitutional violation. Williams v. Jin, 701 Fed. Appx. 78, 79-81 (3d Cir. 2017) (physician's non-surgical treatment of prisoner's right inguinal hernia for nearly four years did not constitute deliberate indifference).

However, an inmate's disagreement with the diagnosis or course of treatment does not establish "deliberate indifference" under the Eighth Amendment. Estelle, 429 U.S. at 106. Numerous courts when asked to determine whether a prisoner's Eighth Amendment right has been violated for a doctor's failure to recommend surgery to treat a prisoner's hernia have found that the treatment plan and decision to recommend surgery for a hernia lies squarely within the medical judgment of the treating physician and does not constitute an Eighth Amendment violation. McCabe v. Pennsylvania Dep't of Corr., No. 1:CV-12-00293, 2012 WL 6055024, at *7 (M.D. Pa. Dec. 5, 2012), aff'd, 523 Fed.Appx. 858 (3d Cir. 2013) (no Eighth Amendment violation for failing to treat a prisoner's reducible hernia with surgery); Brown v. Beard, 445 Fed.Appx. 453, 455 (3d Cir. 2011) (no Eighth Amendment violation where prison medical staff treated prisoner's umbilical hernia with pain medication and abdominal binder rather than recommending surgery); Winslow v. Prison Health Servs., 406 Fed.Appx. 671 (3d Cir. 2011).

For example, in Winslow v. Prison Health Servs., the Court of Appeals for the Third Circuit in a non-precedential opinion determined that prison doctors did not act with deliberate indifference to prisoner's medical

21

needs by not recommending surgery for the treatment of the prisoner's hernia and instead prescribing a hernia belt, even though the prison doctors considered the cost of the prisoner's treatment in declining to order surgery. 406 Fed.Appx. 671, 675 (3d Cir. 2011). The doctors testified that the standard treatment for an inguinal hernia was non-surgical and that with proper treatment that the prisoner's hernia could heal without surgery, and although the prisoner provided his own expert who testified that hernias generally require surgery, the court found that this amounted to negligence which does not demonstrate a deliberate indifference to the prisoner's medical needs. Id.

Here, it is undisputed that Plaintiff was seen by Dr. Wheeler, and other medical personnel on numerous occasions for treatment of his inguinal hernia and Dr. Wheeler concluded that his course of treatment would be to follow-up on Plaintiff's hernia in four months. As previously set forth, an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference under the Eighth Amendment. Durmer, 991 F.2d at 69; Spruill, 372 F.3d at 235. To the extent that Plaintiff argues that the treatment of his inguinal hernia was delayed, and that Dr. Wheeler interfered with his access to treatment, it seems that he is arguing that Dr.

22

Wheeler's failure to recommend surgery constitutes delayed treatment and denial of access to treatment. This argument is rejected, as Plaintiff merely disagrees with the course of treatment prescribed to him, which is not actionable under the Eighth Amendment.

Furthermore, Plaintiff's allegation that the Dr. Wheeler denied Plaintiff surgery because of cost constraints does not support a claim of deliberate indifference. The Third Circuit held in Winslow, supra, that the naked assertion that a defendant considered or operated based on an effort to contain costs does not set forth an adequate factual basis to support a claim predicated on deliberate indifference. Id. at 674. In Winslow, the prisoner alleged that he had been diagnosed with a hernia and that the decision to treat his hernia with a belt instead of with surgery was improperly motivated by non-medical factors, principally cost. Id. at 672–73, 675. The plaintiff alleged that he was harmed by the prison's medical provider's "policies to save money [.]" Id. at 674. The Third Circuit held as follows:

> For one thing, the complaint's allegation that Winslow was harmed by "policies to save money" is exceedingly conclusory; the complaint does not provide any indication either of (1) what the relevant policies are, (2) what basis he has for thinking that "policies to save money" affected his medical treatment, or (3) what specific treatment he was denied as a result of these policies. More fundamentally, the naked assertion that Defendants considered cost in treating Winslow's hernia does

23

not suffice to state a claim for deliberate indifference, as prisoners do not have a constitutional right to limitless medical care, free of cost constraints under which law-abiding citizens receive treatment. See Reynolds v. Wagner, 128 F.3d 166, 175 (3d Cir.1997) ("[T]he deliberate indifference standard of Estelle does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society."); Johnson v. Doughty, 433 F.3d 1001, 1013 (7th Cir.2006) ("The cost of treatment alternatives is a factor in determining what constitutes adequate, minimum-level medical care, but medical personnel cannot simply resort to an easier course of treatment that they know is ineffective." (citations omitted)); Caines v. Hendricks, No. 05–1701, 2007 U.S. Dist. LEXIS 9453, 2007 WL 496876 at *8 (D.N.J. Feb.9, 2007) ("[I]t is not a constitutional violation for prison authorities to consider the cost implications of various procedures, which inevitably may result in various tests or procedures being deferred unless absolutely necessary.").

Winslow, 406 F. App'x at 674–75.

As stated in Winslow, the deliberate indifference standard "does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society." Reynolds v. Wagner, 128 F.3d 166, 275 (3d Cir.1997). "Resources are not infinite and reasonable allocation of those resources, taking into account cost, does not amount to deliberate indifference even if a prisoner does not receive the most costly treatments or his treatments of choice." Brightwell v. Lehman, No. Civ.A. 03–205J,

24

2006 WL 931702, at *8 (W.D.Pa. April 10, 2006). In this regard, the Court notes that the Eighth Amendment does not require a prison to provide an inmate "with the most sophisticated care money can buy." United States v. DeCologero, 821 F.2d 39, 42 (1st Cir. 1987). Nor are prison medical officers required to be blind to assessing the risks and costs of various treatment options. Furthermore, it is also clear that a dispute regarding whether doctors erred in this cost-benefit assessment, which is the essence of the medical art, sounds in negligence only and may not be cast as a constitutional violation.

Accordingly, Dr. Wheeler be entitled to summary judgment on Plaintiff's Eighth Amendment claims.

### C. State Law Claims

Although Plaintiff is attempting to raise state law medical negligence claim against Defendant, Dr. Wheeler, there are no remaining federal claims against him. Accordingly, the Court declines to exercise jurisdiction over Plaintiff's state law medical negligence claim asserted against Dr. Wheeler. See 28 U.S.C. §1367(c)(3); see also Leisure v. Lancaster Cty. Prison, 750 F. App'x 89, 92 (3d Cir. 2018) (affirming district court's decision

to decline exercising supplemental jurisdiction over plaintiff's state negligence claim after dismissing all original jurisdiction claims).

## V. <u>Conclusion</u>

For the reasons set forth above, Defendant, Dr. Wheeler's motion for summary judgment will be granted, in part and denied, in part. The Court will deny Defendant Dr. Wheeler's motion for summary judgment based on Plaintiffs' failure to exhaust administrative remedies. Defendant, Dr. Wheeler's motion for summary judgment based on Plaintiff's Eighth Amendment medical claim will be granted.

A separate Order shall issue.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: January 31, 2022**
19-0101-01

26